UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

BRENDAN KELLY,

Debtor.

Case No. J08-00681-DMD
Chapter 7

**Filed On 6/4/10**

## MEMORANDUM ON TRUSTEE'S SETTLEMENT APPLICATION

The trustee has filed an application to settle the debtor's state law claims against Roger Porto, Mae Gabor and Totem Properties, Inc. The debtor objects to the proposed settlement. For the reasons state herein, I find the trustee's application well taken. The settlement will be approved.

The debtor, Brendan Kelly, was a real estate developer in Juneau. He owned about five acres in the Seven Mile Subdivision in Juneau which he was attempting to develop. In 2006, he recorded a plat subdividing this property into four parcels. Lots 1 through 3 were quarter acre lots. The remaining portion, approximately four acres, was designated as Lot 4. Lot 4 was secured to True North Federal Credit Union. Kelly hoped to develop an 18 lot subdivision on Lot 4.

Mae Gabor is a real estate agent in Juneau. She worked for Totem Properties, Inc., and its broker, Roger Porto. On August 23, 2007, Gabor and her husband, Roger, offered to purchase Lot 3 from Kelly for $100,000.00. Kelly accepted the offer. The Gabors applied for, and obtained, a permit from the Army Corps of Engineers to construct a building pad with fill material on Lot 3. Kelly agreed to supply the fill material needed to for the

building pad, as specified by the permit, for an additional $15,000.00. The Gabors agreed to this, and the purchase price for Lot 3 was increased to $115,000.00. The purchase agreement was either cancelled or terminated; the Gabors never closed the sale on the property. Mae Gabor did offer to sell the property as Kelly's real estate agent, however.

Gabor found Phao and Hong Nguyen, who agreed to purchase the lot. They agreed to buy Lot 3 for $105,000.00. Kelly signed a purchase agreement with the Nguyens on November 20, 2007. The agreement required Kelly to complete the building pad as shown on an attached drawing. The drawing was taken from the permit the Gabors had obtained from the Army Corps of Engineers. At the closing of the sale, $35,571.75 from the sales price was escrowed pending Kelly's completion of the building pad. In March, 2008, he completed the pad in accordance with the Army Corps of Engineers' permit. The Nguyens refused to accept the pad and release the escrowed funds unless an additional 1000 cubic yards of fill was placed on their lot, however.

Kelly needed the escrowed funds badly. On April 15, 2008, he filed suit in Juneau District Court against the Nguyens, Mae Gabor, Totem Properties and Roger Porto. He reached a settlement with the Nguyens on June 8, 2008, whereby the Nguyens agreed to release most of the escrowed funds. $6,000.00 went to Miller Construction to cover Kelly's share of the cost for additional fill[1] and $24,000.00 went to Kelly. The sum of $5,000.00 was

---

[1] Miller Construction spent $10,000.00 for fill material. Under the settlement agreement, the Nguyens paid $4,000.00 of this amount directly to Miller and the remaining $6,000.00 came out of the escrowed funds. *See* Kelly's Obj. to Approval of Settlement Agreement, filed Jan. 11, 2010 (Docket No. 106), Ex. 7.

2

retained in escrow pending the construction and repair of a water line on Lot 3. The Nguyens were subsequently dismissed as defendants from Kelly's state court action. As to the remaining defendants, Kelly alleges that because he failed to receive the escrowed proceeds promptly, he was unable to make his mortgage payment on Lot 4 of the Seven Mile Subdivision. Consequently, he lost the lot in foreclosure, which in turn resulted in the loss of his real estate development business, forcing him to file bankruptcy.

Kelly filed for chapter 13 relief on October 9, 2008. He did not list the state court lawsuit as an asset on either his initial Schedule B or his first amended Schedule B,[2] although he did list the suit as pending in his statement of financial affairs.[3] Kelly amended his Schedules B and C after the trustee filed his motion to approve settlement. He listed the suit as a "claim not liquidated; Debtor seeks damages in excess of $150,000," and indicated that the value was unknown.[4] On his amended Schedule C, Kelly claimed $11,035.00 of this claim exempt under 11 U.S.C. § 522(d)(5).[5]

Shortly after Kelly filed his bankruptcy petition, the defendants in his state court action moved for relief from stay so that the state court judge could rule on pending cross-motions for summary judgment. Kelly did not oppose the motion, and an order

---

[2] Schedule B, filed Nov. 17, 2008 (Docket No. 20), at 3; Amended Schedule B, filed Dec. 5, 2008 (Docket No. 22), at 2.

[3] Statement of Fin. Affairs, filed Nov. 17, 2009 (Docket No. 20), at 24, ¶ 4.

[4] Amended Schedule B, filed Apr. 17, 2010 (Docket No. 107), at 5, Item 21.

[5] Amended Schedule C, filed Apr. 17, 2010 (Docket No. 108), at 1.

3

granting relief from stay was entered on February 2, 2009. Kelly voluntarily converted his case to one under chapter 7 on February 13, 2009. Larry Compton is the duly appointed chapter 7 trustee.

After relief from stay was granted, the district court judge issued a decision on the pending cross-motions for summary judgment.[6] The court held that Totem Properties owed a duty of good faith and fair dealing to Brendan Kelly, and denied Totem Properties' motion for summary judgment.[7] Kelly's cross-motion, which asked the court to find that Totem Properties had breached this duty, was also denied, however. The court noted that, although a copy of a drawing from the Army Corps of Engineers permit was attached to the Nguyen purchase agreement, "the language of the agreement required the pad to be approved by a civil engineer, but did not explicitly require construction consistent with the permit. The parties' inconsistent expectations are best resolved by the finder of fact [rather] than through a summary judgment motion."[8]

After the court issued this decision, the case was transferred to Juneau Superior Court. Kelly, through his attorney Vance Sanders, filed an amended complaint in that court on November 3, 2009. The amended complaint alleges four claims for relief: breach of contract, breach of implied contract, interference with contractual relations and engaging in

---

[6] Kelly's Obj. to Approval of Settlement Agreement, filed Jan. 11, 2010 (Docket No. 106), Ex. 2.

[7] *Id.*, Ex. 2 at 7.

[8] *Id.*

4

unlawful trade practices. Sanders was not employed as an attorney for the bankruptcy estate when he filed the amended complaint.

Kelly's state court claims are an asset of this bankruptcy estate under 11 U.S.C. § 541(a)(1). The trustee seeks to settle the estate's claims against defendants Gabor, Totem Properties and Porto for the sum of $25,000.00. Kelly objects to the proposed settlement. He contends the case is worth much more than this.

In considering the adequacy of a proposed settlement agreement, a court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.[9]

The parties differ widely on their views as to the probability of success in the litigation. The trustee takes a negative view of the litigation. From his standpoint, this is essentially a breach of contract claim with actual damages of $6,000.00 and little chance of a punitive damage recovery. The trustee projects that the "most likely *best* result for the creditors is a jury award of $6,000, interest, and Rule 82 attorney's fees and costs at some

---

[9] *Martin v. Kane (In re A & C Properties),* 784 F.2d 1377, 1381 (9th Cir. 1986), *citing In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d, 1128, 1135 (8th Cir. 1984).

5

time in the future."[10] Kelly, on the other hand, contends that prompt payment of the escrowed funds would have permitted him to retain Lot 4, which he could have then successfully developed into a multi-lot subdivision with a net gain of $1.6 million.[11]

Examining Kelly's first amended complaint, I feel that his projected value of the claims therein is greatly inflated. His first two claims sound in contract. Kelly asserts claims for breach of the covenant of good faith and fair dealing and breach of an implied contract. Liability for these claims is hotly contested. Kelly repeatedly emphasizes Gabor's failure to include the whole of the Army Corps of Engineers' permit in the Ngyuen purchase agreement as a basis for liability. He conveniently ignores the language of the purchase agreement itself, however. The agreement specified that the pad would conform to the requirements of the Nguyens' civil engineer, rather than the Army Corps' permit. Paragraph 3 of the agreement provided:

> 3. Building pad and 30 ft. wide subsurface driveway pad per attached drawing. The house pad will extend 5 feet beyond the perimeter of the foundation footing on each side. The fill must be structural grade materials (shot rock or NFS pit run) approved by the civil engineer. House pad shall be done under the supervision of the engineer, shall be completed to his satisfaction and completed job must be signed off by him. Seller shall meet with the engineer before the start of work and shall coordinate schedule with him.

---

[10] Compton Decl. in Supp. of Application to Settle State Law Claims, filed May 18, 2010 (Docket No. 111), at 8, ¶ 32 (emphasis in original).

[11] Kelly's Obj. to Approval of Settlement Agreement, filed Jan. 1, 2010 (Docket No. 106), at 10.

> Any deficiencies must be corrected to comply with the civil engineer requirements and recommendations.[12]

The purchase agreement further provided for a retention of funds in escrow and stated that "[n]o amount will be released to the seller until all the seller to-be completed work has been done and house pad signed off by engineer."[13]

In spite of this contractual language, Kelly has placed great importance on the drawing that was attached to the agreement. The drawing was a copy of a page from the permit issued by the Army Corps of Engineers. It showed the dimensions of the house pad and the length and width of the driveway, but did not state the depth of fill to be provided.[14] Under the language of the purchase agreement, that detail was left to the buyers' engineer. The Nguyens never agreed to the Army Corps of Engineers' standards. The purchase agreement was specific that Kelly had to satisfy the requirements of the Nguyens' civil engineer. I have a hard time seeing any liability for Gabor and the real estate defendants under such circumstances.

Even assuming the defendants had some kind of contractual liability for the $6,000.00 worth of additional fill, Kelly's damage claims for lost profits on Lot 4 are speculative and remote. "An award of lost profits is not proper if it is the result of speculation. This is based on the generally accepted principle of contract law that damages

---

[12] Trustee's Ex. A, at 34.

[13] *Id.* at 34.

[14] *Id.* at 31.

7

are not recoverable unless they are reasonably certain."[15] There are many other factors at play here that could be attributed to Kelly's financial demise. The Juneau real estate market collapsed, making lucrative development of any land less likely. Kelly was heavily leveraged in speculative, unimproved real property. Lot 4 was tied up in Kelly's bankruptcy case for nearly a year. During that time period, no offers were made for the property that exceeded his underlying debt of about $217,000.00. Further, the trustee has made a compelling showing that, even if Kelly had promptly received the escrowed funds, he was so far under water on his financial obligations that his plans for developing Lot 4 would likely have failed in any event.[16] Considering all of these factors, Kelly's contention that the defendants' conduct somehow resulted in a $1.6 million loss appears unsupportable.

Kelly's complaint also seeks to establish a claim for tortious interference with contractual relations and exemplary damages. Assuming some kind of liability could be established, "the damages recoverable for a tort are those directly attributable to the tort and no more."[17] Those damages are $6,000.00, not the $1.6 million claimed by Kelly. When compensatory damages are only $6,000.00, there is no reasonable basis for exemplary damages of a substantial amount. Punitive damages can only be awarded if a plaintiff shows, by clear and convincing evidence, that a defendant's conduct was outrageous or evidenced

---

[15] *Guard v. P & R Enter., Inc.,* 631 P.2d 1068, 1071 (Alaska 1981) (citations omitted).

[16] *See* Trustee's Reply to Debtor's Opp'n to Application to Settle, filed May 17, 2010 (Docket No. 110), at 6-9; Compton Decl. in Supp. of Application to Settle, filed May 18, 2010 (Docket No. 111), at 5-7.

[17] 22 AM. JUR. 2D *Damages* § 120 (2003).

8

reckless indifference to the interests of another.[18]  Here, there is simply no smoking gun that reveals any possibility of a punitive damage award.  Moreover, in Alaska punitive damages are capped at $500,000.00 and 50% of any punitive damage award is payable to the State of Alaska.[19]  I feel Kelly's projection of a punitive damage award is unrealistically optimistic.

Kelly's final claim for relief seeks damages for the defendants' purported unfair and unlawful trade and business practices.  Under Alaska law, however, the Unfair Trade Practices and Consumer Protection Act does not apply to real property transactions.[20]  There is no basis for an unfair trade practice claim against Gabor and the Totem defendants.

Overall, I agree with the trustee.  The likelihood of recovering a judgment well in excess of $6,000.00, let alone punitive damages, is low.  The first *A & C* factor weighs in favor of the trustee.

The collectability of a judgment is the second factor for a court to consider in evaluating a proposed settlement.  Here, the defendants appear to have liability insurance, although the policy limits of the insurance have not been disclosed.  The insurance would probably cover an award for actual compensatory damages, attorney's fees and costs. Coverage for punitive damages is very unlikely, however.

The third *A & C* factor to be considered is the complexity of the litigation and the expense, inconvenience and delay associated with the case.  Kent Sullivan, the attorney

---

[18] AS 09.17.020(b).

[19] AS 09.17.020(g), (j).

[20] *State of Alaska v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 412-13 (Alaska 1982).

9

for the Totem defendants, regards the litigation as very complex. He thinks expert witnesses would be needed at trial. I don't find the case particularly complex. Kelly's state court attorney, Mr. Sanders, has agreed to advance the costs of the litigation on behalf of the estate. There would be no great inconvenience to the estate by continuing the litigation. It will take 18 months to two years to try the case before a jury. No estimates were made for either the costs of an appeal and the time associated with it. The estate lacks the resources to prosecute an appeal. Nor could the estate cover Rule 82 attorney's fees, should the defendants ultimately prevail in the litigation.

The final consideration under *A & C* is the paramount interest of the creditors and a proper deference to their reasonable views in the premises. Kelly has scheduled 26 general unsecured claims, with total unsecured debt of $118,882.00. The majority of the unsecured creditors are active in this case; 18 unsecured creditors have filed proofs of claim, for a total in excess of $111,000.00. Not one of these creditors has filed a written objection to the trustee's proposed settlement. Tyler Rentals, an unsecured creditor with a claim for $14,148.65, did have its attorney, Blake Chupka, monitor the hearing on the trustee's settlement telephonically. At the close of the hearing, Chupka stated that his client's silence should not be construed as acquiescence with the trustee's proposed settlement. I infer from his statement that Tyler Rentals opposes the trustee's settlement. No other creditor has spoken up.

The paramount interest of creditors is getting paid a substantial dividend. Under either alternative available here – pursuit of the state court litigation or approval of the trustee's settlement – I don't see that happening. Rather than prosecute a questionable claim in state court which could lead to little or no distribution in the future, creditors should take their lumps now, receive a small dividend of 7 to 8 percent and be done with this case. That is how I see their interests best being served.

For the reasons stated above, I conclude that the trustee's proposed settlement with Mae Gabor, Roger Porto, and Totem properties should be approved. An order and judgment will be entered consistent with this memorandum.

DATED: June 4, 2010.

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:    D. Bundy, Esq.
V. Sanders, Esq.
B. Chupka, Esq.
K. Sullivan, Esq.
G. Spraker, Esq.
L. Compton, Trustee
U. S. Trustee

06/04/10